In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-416 CV


____________________



CHRISTOPHER A. HANNA AND BETH HANNA, Appellants 



V.



VASTAR RESOURCES, INC., Appellee






On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-159,277-B






OPINION


 Christopher A. Hanna and Beth Hanna ("the Hannas") sued Vastar Resources, Inc.
("Vastar") and six other defendants to recover damages for injuries allegedly caused by
negligence. The trial court severed the Hannas' claim against Vastar and entered a final
summary judgment in Vastar's favor. The Hannas appeal. 


Background


 Vastar owned a shore base facility at Sabine Pass, Texas, at which material could
be stored for use by the offshore oil and gas industry. Another company, Baker/MO,
managed the facility for Vastar, did the marketing for the shore base, and ran the base's
everyday operations. As part of its marketing function, Baker/MO leased space on the
facility to those client-companies who wanted to use the dock to load and off-load material. 
The client-companies paid a yard storage fee and a shore base labor rate for the operations
of a crane and a forklift; the companies stored food supplies in metal boxes that could be
placed on boats and transported to offshore rigs. 

 On the day of the accident, Christopher Hanna was delivering products for his
employer, Sysco Food Services, to a refrigerated box leased by Oryx Energy on the shore
base. Hanna hit his head while exiting the Oryx refrigerated box. He claims he should
have been required to wear a hard hat while he was on the shore base facility. 

Vastar's Motion


 In its summary judgment motion, Vastar asserted no evidence supported the Hannas'
negligence cause of action. Specifically, Vastar maintained it owed no legal duty to Hanna
under the circumstances. "Whether an entity has a duty in particular circumstances is a
question of law for the court to decide from the facts surrounding the occurrence in
question." North Am. Van Lines, Inc. v. Emmons, 50 S.W.3d 103, 113 (Tex. App.--Beaumont 2001, pet. denied). Here, the Hannas had the burden to point out evidence of
circumstances that gave rise to a duty. See Tex. R. Civ. P. 166a(i) and comments to
166a(i). 

Hannas' Argument


 The Hannas maintain that Vastar negligently permitted a violation of safety rules
(1) by failing to inform Hanna he had to wear a hard hat while on the premises and (2) by
failing to see that he did so. They say the evidence establishes the following: 

 Vastar was the owner of the premises where the accident occurred; 

 Baker/MO, another defendant, was an agent working on behalf of Vastar; 


 The shore base had safety requirements for delivery personnel and truck
drivers delivering products to the shore base;

 

 Neither Vastar nor Baker/MO informed the drivers or delivery personnel of
those safety procedures and neither one checked to see if the procedures
were being followed. 


The Hannas ask this court to reverse the summary judgment and remand the case for trial. 


Summary Judgment



 The summary judgment sets out the ground on which the no-evidence motion in
favor of Vastar was granted: Vastar owed no legal duty to Hanna under the circumstances. 
Citing Johnson County Sheriff's Posse, Inc. v. Endsley, 926 S.W.2d 284 (Tex. 1996), the
judgment states that Vastar leased property to a third party over which it had no control,
as it relates to the details of the operation of the shore base. The judgment also recites
there is no evidence that the injury resulted from a defect on a portion of premises under
Vastar's control and no evidence that any injury arose from Vastar's negligence in making
repairs or from concealing a known defect. Citing Koch Ref. Co. v. Chapa, 11 S.W.3d
153 (Tex. 1999), a negligent activity case, the summary judgment further declares the
evidence does not show Vastar controlled the details of the work at the shore base. 

Premises Owner Duty


 Generally, an owner of land has a duty to use reasonable care to make and keep the
premises safe for business invitees. See Clayton W. Williams, Jr., Inc. v. Olivo, 952
S.W.2d 523, 527 (Tex. 1997). The legal duty of an owner or occupier may subject it to
liability in two situations: (1) those arising from a defect existing on the premises when the
independent contractor/invitee entered; and (2) those arising from activity on the premises. 
Id; see also Redinger v. Living, Inc., 689 S.W.2d 415, 417 (Tex. 1985). To recover on
a premises defect theory, the person must have been injured by a condition on the
property. Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992). To recover for
injuries caused by negligent activity, the person must have been injured by, or as a result
of, contemporaneous activity rather than by a condition created by the activity. Id. at 264. 
 The Hannas' claim against Vastar is a negligent activity claim. The Hannas
maintain that Vastar failed to enforce a hard hat safety rule. On appeal, the Hannas
present three arguments for the imposition on Vastar of a legal duty to inform Hanna of
the shore base safety procedures and to enforce the rule requiring Hanna to wear a hard
hat: (1) an agency relationship with Baker/MO, (2) an independent contractor relationship
with Baker/MO, or (3) an independent duty under Restatement (Second) of Torts. 

Control


 The agency and independent contractor arguments both assert Vastar's control over
Baker/MO. The Hannas contend Baker/MO was Vastar's agent and that Vastar, as
principal in the relationship, is vicariously liable for Baker/MO's negligence in failing to
enforce safety rules. The general rule of law is that an agent is one who consents to the
control of another, the principal, where the principal manifests consent that the agent shall
act for the principal. See Royal Mortgage Corp. v. Montague, 41 S.W.3d 721, 732
(Tex.App.--Fort Worth 2001, no pet). A principal/agency relationship is not presumed,
and the party asserting the relationship has the burden of proving it. Id. The party
claiming agency must prove the principal has both the right to assign the agent's task and
the right to control the means and details by which the agent will accomplish the task. 
Lyons v. Lindsey Morden Claims Management, Inc., 985 S.W.2d 86, 90 (Tex. App. --El
Paso 1998, no pet.). The principal's extent of control over the details of accomplishing
the assigned task primarily distinguishes the status of agent from that of independent
contractor. Id. The right of control is "the supreme test" in establishing the master-servant or agency relationship. See Newspapers, Inc. v. Love, 380 S.W.2d 582, 588, 590,
598 (Tex. 1964); see also Exxon Corp. v. Tidwell, 867 S.W.2d 19, 21 (Tex. 1993). Although appellants maintain the relationship between Vastar and Baker/MO is that
of principal and agent, they also appear to argue alternatively that Vastar owed a legal duty
to Hanna even if the relationship between Vastar and Baker/MO was that of premises
owner/independent contractor. As with the principal/agent contention, appellants argue
Vastar retained and exercised control over Baker/MO sufficient to make Vastar liable for
Baker/MO's negligence. The general rule is that an owner/occupier does not owe a duty
to ensure that an independent contractor performs its work in a safe manner. See generally
Hoechst-Celanese Corp. v. Mendez, 967 S.W.2d 354, 356 (Tex. 1998). However, a
premises owner may be liable when the owner retains sufficient supervisory control over
work on the premises. Coastal Marine Serv. of Tex., Inc. v. Lawrence, 988 S.W.2d 223,
225-26 (Tex. 1999). The supervisory control must relate to the activity that actually
caused the injury and must grant the owner at least the power to direct the order in which
work is to be done or the power to forbid its being done in an unsafe manner. Id. at 226;
Redinger, 689 S.W.2d at 418. A premises owner's control must relate, or have a nexus,
to the condition or activity that caused the injury. Mendez, 967 S.W.2d at 357. The
premises owner's duty of care is commensurate with the control it retains over the
independent contractor's work. Id.

 We summarize the evidence on control as follows. Baker/MO managed the shore
base and was responsible for the operation of the yard. Jaime Hollier, Baker/MO's shore
base supervisor, indicated that although Vastar had an office on the shore base, Vastar did
not have any day-to-day function there. "[T]he shore base was turned over to . . .
Baker/MO to . . . operate the everyday operations[,]" and Hollier was in charge of safety. 
Hollier testified there was an operations safety manual for the base; all the Baker/MO
employees received a copy of that manual; and "[w]e'd hold weekly safety meetings and
monthly safety meetings." Hollier also described a policy requiring truck drivers who
came on the shore base to wear hard hats, steel-toed boots, and safety glasses; vendors like
Sysco would be informed of the policy. A Baker/MO employee would check each driver
entering the facility to see if the driver had on the required safety equipment. Once the
check was made, the Baker/MO expediter would tell the driver where to unload the
materials being delivered. Hollier also testified that Vastar did not load or unload the
boxes; did not own, control, maintain, inspect, or repair the boxes; and had no
responsibility for safety issues associated with loading the boxes. 

 Hollier's Vastar contact was Bill Kasper, who worked in Houston. Approximately
once a month, Hollier had telephone contact with Kasper, who came only infrequently to
the shore base. According to Hollier, Kasper did not set out any type of policies or
procedures for the shore base. Hollier also testified that on the infrequent occasions when
Kasper was at the shore base, Kasper had the authority to shut a job down if he saw a
safety violation. As Hollier stated, "[W]e kind of had the safety rules where anyone could
stop an unsafe act on the yard and, you know, come to the attention of someone and get
it straight." But still, Baker/MO "was responsible for the yard . . . ." For example, if
Kasper walked out on the shore base without a hard hat on, Hollier, Baker/MO's
employee, had the right to tell him to put a hard hat on. According to Hollier, Vastar "had
to follow the rules like everybody else." 

 Vastar had employees at the shore base. One was L. D. Cochran, the production
superintendent, who was responsible for the offshore oil and gas production operations. 
As one indicator of the extent of Baker/MO's independence, Hollier testified that should
Cochran want to change offices he had to "go through" Hollier. Vastar was not a
principal vicariously liable for Baker/MO's conduct. 

 Though Vastar's employees, along with everyone else on the shore base, had the
authority to see that persons on the premises wore hard hats, a premises owner's insistence
upon the observance of a general safety rule does not impose an unqualified duty of care
on the premises owner to ensure that no one on its premises does anything unsafe. See
Mendez, 967 S.W.2d at 357-58. General safety requirements may give rise to a narrow
duty of care. Id. at 357. For example, "an employer who is aware that its contractor
routinely ignores applicable federal guidelines and standard company policies related to
safety may owe a duty to require corrective measures to be taken . . . ." Id. As Mendez
explains, the employer's or premises owner's duty of care "is commensurate with the
control it retains over the contractor's work." Id. 

 No evidence was presented that Baker/MO routinely ignored the safety rules, or that
Vastar had any awareness of negligent conduct by Baker/MO or by Sysco, plaintiff's
employer. See id. at 357. Under Mendez, the extent of Vastar's limited duty under the
circumstances here was to ensure "that any safety requirements and procedures it
promulgated did not unreasonably increase, rather than decrease, the probability and
severity of injury." Id. at 358. To hold otherwise would deter premises owners from
imposing even minimal safety rules to be followed on their premises. See id. No evidence
was presented in this case that the safety rule at issue here unreasonably increased, rather
than decreased, the probability and severity of injury on Vastar's premises. 

 The Hannas claim is based on their assertion that Hanna should have been required
to wear a hard hat, but no evidence of control by Vastar was presented sufficient to make
Vastar liable for Baker/MO's conduct in either a principal/agent or an owner/independent
contractor context. 

Inherently Dangerous Work


 Finally, appellants contend that Vastar had an independent duty to take precautions
against the risks associated with the operation of a shore base. Appellants assert a
premises owner or occupier has a non-delegable duty to ensure that inherently dangerous
work is performed safely. See Restatement (Second) of Torts §§ 416, 427 (1965); see
also Mendez, 967 S.W.2d at 356; Loyd v. Herrington, 143 Tex. 135, 182 S.W.2d 1003
(1944); Alamo Lumber Co. v. Pena, 972 S.W.2d 800, 806 (Tex. App.-- Corpus Christi
1998, pet. denied). However, no evidence suggests that the job of delivering groceries to
a refrigerated box at the shore base is inherently dangerous work. 

 The trial court did not err in granting summary judgment in favor of Vastar. The
judgment is affirmed.


 AFFIRMED.

 _________________________________

 DAVID B. GAULTNEY

 Justice


Submitted on May 16, 2002

Opinion Delivered August 15, 2002 

Publish


Before Walker, C.J., Burgess and Gaultney, JJ.