

# Fourth Court of Appeals

## San Antonio, Texas

### OPINION

No. 04-13-00211-CV

Joshua **JACOBS**,
Appellant

v.

**HUSER CONSTRUCTION, INC.**,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 12540B
Honorable Rex Emerson, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  March 19, 2014

AFFIRMED

Appellant Joshua Jacobs, an independent contractor's employee, was seriously injured at a construction site when he fell from a ladder.  Jacobs sued Huser Construction, Inc., the general contractor, for its alleged negligence in providing a defective ladder and failing to warn him of its danger.  In its traditional motion for summary judgment, Huser asserted that it had no duty to Jacobs, as a matter of law, because it neither retained contractual control nor exercised actual control over the means, methods, or details of Jacobs's work.  The trial court granted Huser's motion and Jacobs appeals.  We affirm the trial court's judgment.

## BACKGROUND

Jacobs worked for Ian Frazar, an individual doing business as Frazar Steel Fab, who was a subcontractor to Huser. Under the terms of their contract, Frazar was required to furnish its own jobsite equipment. If Frazar used Huser's "tools, machinery or equipment," Frazar agreed "[t]o make its own determination that such tools, machinery or equipment [were] fit for the intended purpose . . . and accept such tools, machinery or equipment without warranty or representation by [Huser] as to the condition of such tools, machinery or equipment."

Two days before Jacobs's accident, he and another Frazar employee moved Huser's extension ladder into place to access a second story mezzanine. They secured the ladder to the mezzanine and used it without incident several times before Jacobs's accident. According to Jacobs, while he was carrying pipe up the ladder, the ladder either broke or slipped, he fell, and he seriously injured his head, neck, and back.

In his suit against Huser, Jacobs alleged that Huser controlled the premises, and his injuries were caused by a dangerous condition that Huser negligently allowed to exist. Huser denied it had any duty of care to Jacobs, and it moved for summary judgment. The trial court granted Huser's traditional motion for summary judgment, and Jacobs appeals.

## STANDARD OF REVIEW

To prevail on a traditional motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c); *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant movant may make that showing by conclusively disproving at least one essential element of the plaintiff's claim. *Elliott–Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995).

To determine whether the defendant movant met its burden, we examine "the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *accord Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex. 2007) (per curiam).

If the defendant movant met its burden and the plaintiff's response fails to raise a genuine issue of material fact on each essential element, the defendant movant is entitled to judgment on its motion. *See Elliott–Williams*, 9 S.W.3d at 803; *Doe*, 907 S.W.2d at 476–77. If the trial court grants the motion but "does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *accord Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005).

**PREMISES DEFECT CLAIM**

**A.     Parties' Arguments**

Jacobs sued Huser for negligence. He alleged (1) Huser controlled the premises where he was injured, (2) Huser failed to properly inspect the premises including the ladder, (3) the ladder constituted a dangerous condition, (4) Huser failed to warn him of the danger, and (5) the dangerous condition caused his injuries. Huser answered and denied that it owed Jacobs any duty because Frazar was an independent contractor, Jacobs was its employee, and Huser did not control

Jacobs's work.[1]  We must determine whether Huser owed Jacobs a duty of care; we begin by examining the nature of Jacobs's suit.

## B.      Duty

Jacobs asserts Huser was responsible for a premises defect which caused his injury; we analyze his claim as a premises defect case.  *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (distinguishing negligent activity and premises defect cases); *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 225 (Tex. 1999) (per curiam).

### 1.        Premises Defect Category

Premises defect cases are divided into two categories: "(1) those existing when an independent contractor enters, and (2) those created by the independent contractor's work." *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 295 (Tex. 2004); *accord Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002); *Coastal Marine*, 988 S.W.2d at 225.

It is undisputed that Jacobs fell from Huser's extension ladder while the ladder was attached to the mezzanine, and the ladder was not attached to the mezzanine before Frazar and Jacobs began their work at the construction site.  Specifically, Jacobs testified that he and another Frazar employee took Huser's ladder, positioned it in place, and attached it to the mezzanine to do their work.  Because the undisputed evidence shows the alleged defect—the extension ladder secured to the mezzanine—did not exist when Frazar began its work at the site, we analyze this case under the second category: a defect arising from Frazar's work activity.  *See Bright*, 89 S.W.3d at 606; *Coastal Marine*, 988 S.W.2d at 225.

---

[1] Huser asserts it enjoys the statutory protections of a property owner against liability for the acts of an independent contractor.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003 (West 2005) (raising knowledge requirement to impose liability from mere constructive knowledge to actual knowledge); *Phillips v. Dow Chem. Co.*, 186 S.W.3d 121, 135 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (recognizing change); *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (same).  Because duty is an element of both common-law negligence and the statute, and we conclude Huser owed Jacobs no duty, we need not address the statute's applicability.

Under this second premises defect category, the general contractor has no duty to the independent contractor's employee "unless [the general contractor] retains a right to control the work that created the defect." *Khan*, 138 S.W.3d at 295; *accord Bright*, 89 S.W.3d at 606; *Coastal Marine*, 988 S.W.2d at 225–26; *see also Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 n.1 (Tex. 1999) (equating the duty a general contractor owes to an independent contractor's employee with that owed by the premises owner, and noting that "[g]enerally, a premises owner does not have a duty to ensure that an independent contractor safely performs his work"); *Olivo*, 952 S.W.2d at 527 (same). We consider whether the alleged defect was under Huser's control.

### 2. Duty Arising from Control

"A party can prove right to control in two ways: first, by evidence of a contractual agreement that explicitly assigns the [general contractor] a right to control; and second, in the absence of a contractual agreement, by evidence that the [general contractor] actually exercised control over the manner in which the independent contractor's work was performed." *Bright*, 89 S.W.3d at 606; *accord Koch Ref. Co.*, 11 S.W.3d at 155 & n.1 ("[C]ases considering the duties of premises owners and general contractors are used interchangeably.").

The plaintiff must prove the general contractor had the right to control, or actually exercised control, over the means, methods, or details of the independent contractor's work, and that control related to the plaintiff's injury. *See Bright*, 89 S.W.3d at 606; *Elliott-Williams*, 9 S.W.3d at 804. A general contractor's right to control when work starts and stops, or to ensure work meets applicable specifications, is not enough control to impose a duty of care. *See Elliott-Williams*, 9 S.W.3d at 804 (quoting the Restatement (Second) of Torts for "the degree of control necessary to create a duty"); *accord Bright*, 89 S.W.3d at 607; *Coastal Marine*, 988 S.W.2d at 225–26. We address in turn each basis for control.

*3.      Contractual Right to Control*

We first determine whether the subcontract between Huser and Frazar granted Huser control over the means, methods, or details of Frazar's work such that it created in Huser a duty of care to Jacobs. *See Bright*, 89 S.W.3d at 607; *Elliott-Williams*, 9 S.W.3d at 804.

a.      Applicable Law

"A contract may impose control upon a party thereby creating a duty of care." *Bright*, 89 S.W.3d at 606; *accord Elliott-Williams*, 9 S.W.3d at 804. "'For a general contractor to be liable for its independent contractor's acts, it must have the right to control the means, methods, or details of the independent contractor's work.'" *Bright*, 89 S.W.3d at 606 (quoting *Elliott-Williams*, 9 S.W.3d at 804). "Further, the control must relate to the injury the negligence causes . . . ." *Id.*; *Elliott-Williams*, 9 S.W.3d at 804. We examine the subcontract for its relevant clauses.

b.      Subcontract Clauses

The parties do not dispute the existence or validity of the subcontract between Huser and Frazar, and Huser's summary judgment evidence included a copy of the contract. In the contract, Huser and Frazar agreed Frazar would furnish its own equipment, including items such as ladders, but Frazar could use Huser's equipment with Huser's permission. The parties agreed Frazar would "make its own determination that [Huser's] . . . equipment [was] fit for the intended purpose of subcontractor" and comply with applicable safety provisions:

> 8. Safety:
>
> The Subcontractor shall take all reasonable safety precautions pertaining to the Work and the conduct thereof and shall comply with all safety and health laws. Without limiting the generality of the foregoing, Subcontractor shall comply with all applicable laws, ordinances, rules, regulations or orders issued by a public authority, as well as the terms, conditions and obligations of the attachment entitled "Safety Requirements" as if incorporated herein.

The parties also agreed to the degree of control Huser would retain over Frazar:

22. Independent Contractor:

Subcontractor shall be an independent contractor and shall assume all of the rights, obligations, and liability applications [sic] to it as such independent contractor. Any provisions in this Subcontract which may appear to give Contractor the right to direct Subcontractor as to the details of doing the Work or to exercise any measure of control over the Work shall mean the Contractor is exercising such control only to see that the work is being performed and results accomplished according to the terms of this Subcontract and according to the terms of the General Contract.

The plain language of the subcontract gives Huser the right to ensure Frazar's work meets the general contract and subcontract specifications and schedules, but excludes Huser's control over the details of Frazar's work. *See Bright*, 89 S.W.3d at 607.

c. No Control by Contract

Having reviewed the applicable subcontract provisions, we conclude as a matter of law that the subcontract did not give Huser the right to control the means, methods, or details of Jacobs's work. *See Bright*, 89 S.W.3d at 606; *Elliott-Williams*, 9 S.W.3d at 804. Therefore, we must also conclude the contract did not create in Huser any duty of care to Jacobs. We now turn to the second basis for control: actual exercise of control. *See Bright*, 89 S.W.3d at 607.

*4.  Actual Exercise of Control*

Jacobs also asserts Huser owed him a duty of care because it exercised actual control over his work. *See Bright*, 89 S.W.3d at 607; *Coastal Marine*, 988 S.W.2d at 226.

a. Applicable Law

Even if a general contractor has no contractual right to control an independent contractor's work, the general contractor may owe the independent contractor's employee a duty of care if it exercises actual control over the means, methods, or details of the independent contractor's work and the control relates to the employee's injury. *See Bright*, 89 S.W.3d at 607–08; *Elliott-Williams*,

9 S.W.3d at 804; *Coastal Marine*, 988 S.W.2d at 226. We consider whether the summary judgment evidence raises a genuine issue of material fact on the question of actual control.

### b.     Gayda's Affidavit

In its motion for summary judgment, Huser included an affidavit from its jobsite superintendent Mark Gayda. Gayda averred Jacobs worked under the direction and control of Frazar, an independent contractor. He also averred Huser did not control the manner in which Jacobs performed his work "or the details of his work in moving, placing, securing and using the ladder to carry pipe up to the mezzanine level."

### c.     Jacobs's Deposition

Huser's motion also included excerpts from Jacobs's deposition. In his deposition, Jacobs testified he worked for Frazar, and he took directions on how to do his work from Frazar employees. He stated no one from Huser told him what to do on his job, except for Gayda's telling him the specifications for the height of the handrails. In working on the mezzanine handrails, Jacobs used both the scissor lift and the ladder for access to the mezzanine. He used the scissor lift to lift himself, equipment, and materials up to the mezzanine for welding the handrails; he also used Huser's ladder. Jacobs testified he discussed securing the ladder with his Frazar co-worker and both felt it was securely fastened in place. Jacobs never discussed with Huser personnel anything about using or moving the ladder.

### d.     Jacobs's Summary Judgment Evidence

In his response to Huser's motion for summary judgment, Jacobs provided, inter alia, his own affidavit.[2] He averred Gayda "instructed me to make changes to meet specifications regarding

---

[2] Jacobs also provided a signed statement by Andrew Kettleson, but the statement does not affirmatively show Kettleson is competent to testify, does not indicate it was "sworn to before an officer authorized to administer oaths," and does not show it was "officially certified to by the officer under his seal of office." *See* TEX. GOV'T CODE ANN. § 312.011(1) (West 2013) (definition of affidavit); TEX. R. CIV. P. 166a(f) (form of affidavit); *Mansions in the Forest,*

plans for the height of the handrails." He added "[i]t was not uncommon for Mr. Gayda to issue instructions and orders to workers at the jobsite on details of work to be performed."

Although we credit Jacobs's competent summary judgment evidence in his favor, *see Mann Frankfort*, 289 S.W.3d at 848, his statement regarding Gayda is conclusory and fails to raise a fact issue. "'Conclusory statements in affidavits are not proper as summary judgment proof if there are no facts to support the conclusions.'" *Weech v. Baptist Health Sys.*, 392 S.W.3d 821, 826 (Tex. App.—San Antonio 2012, no pet.) (quoting *Rizkallah v. Conner*, 952 S.W.2d 580, 587 (Tex. App.—Houston [1st Dist.] 1997, no writ)); *see McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003) (expert witness). Jacobs did not testify as to (1) which company's employees Gayda gave "instructions and orders" to, (2) the substance of the "instructions and orders," *see Weech*, 392 S.W.3d at 826 (requiring supporting facts), or (3) how Gayda's instructions and orders caused his accident, *see Bright*, 89 S.W.3d at 606 (requiring the control to "relate to the injury the negligence causes"); *Elliott-Williams*, 9 S.W.3d at 804 (same).

Without supporting facts, Jacobs's testimony that Gayda's directions covered the "details of work to be performed" was conclusory and not proper summary judgment proof. *See Weech*, 392 S.W.3d at 826; *Rizkallah*, 952 S.W.2d at 587. Jacobs's affidavit fails to raise a genuine issue of material fact on the question of whether Huser exercised actual control over his work. *See Weech*, 392 S.W.3d at 826.

---

*L.P. v. Montgomery Cnty.*, 365 S.W.3d 314, 316 (Tex. 2012) (reviewing the procedure to preserve an appellate complaint about a summary judgment affidavit). In its objections to Jacobs's summary judgment evidence, Huser objected to the statement as "not an affidavit," the trial court sustained the objection, and we do not consider it. *See Mansions in the Forest*, 365 S.W.3d at 316 ("When a written statement does not meet [the Government Code's] basic definition, however, it is 'no affidavit at all.'").

e.    No Actual Control

Although Jacobs's affidavit failed to raise a genuine issue of material fact on Huser's actual control, we also consider the other summary judgment evidence. In his deposition, Jacobs testified he used the scissor lift and the ladder to move himself and equipment up to the mezzanine level. Gayda averred he did not tell Jacobs how to do his job. Both Gayda and Jacobs stated Frazar told Jacobs how to do his work. Jacobs did not state Gayda told him how to get the pipes up to the mezzanine, nor did he state Huser ordered or approved his carrying the pipe up the ladder.

Taking Jacobs's evidence as true, and resolving doubts in his favor, we nevertheless conclude the summary judgment evidence presents no genuine issue of material fact on Huser's actual exercise of control over Jacobs's work including carrying pipe up the extension ladder.[3] *See Bright*, 89 S.W.3d at 607–08; *Elliott-Williams*, 9 S.W.3d at 804. Therefore, Huser had no duty of care to Jacobs under actual control because it did not control the means, methods, or details of his work. *See Bright*, 89 S.W.3d at 607–08; *Elliott-Williams*, 9 S.W.3d at 804.

5.    *No Duty of Care to Jacobs*

Because the summary judgment evidence conclusively proves Huser did not retain contractual control or exercise actual control over the means, methods, or details of Jacobs's work that led to his injuries, we conclude Huser did not owe a duty of care to Jacobs. *See Bright*, 89 S.W.3d at 607–08; *Elliott-Williams*, 9 S.W.3d at 804. In the absence of Huser's duty to Jacobs, his premises defect claim fails as a matter of law. *See Bright*, 89 S.W.3d at 607–08, 611.

---

[3] Jacobs argues Huser could have stopped him from using the ladder if Huser had detected the ladder was defective, but like *Bright*, the general contractor's safety procedures and on-site personnel are "not evidence that [Frazar and Jacobs] were not free to do their work in their own way and is not evidence that [Huser] controlled the method of work or its operative details." *See Bright*, 89 S.W.3d at 608.

## CONCLUSION

As the general contractor, Huser had no duty of care to Jacobs—an independent contractor's employee—unless Huser controlled the means, methods, or details of Jacobs's work and that control related to Jacobs's injury. Huser moved for traditional summary judgment on the basis that it owed Jacobs no duty, and the summary judgment evidence raised no genuine issue of material fact on the question.[4] Huser was entitled to summary judgment as a matter of law on its contention it owed Jacobs no duty of care. We affirm the trial court's judgment.

Patricia O. Alvarez, Justice

---

[4] In their respective briefs, Jacobs and Huser cite the trial court's findings it made after it signed the summary judgment. Findings of fact and conclusions of law "can have no purpose and should not be requested, made, or considered on appeal . . . [in a] summary judgment." *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 443 (Tex. 1997); *accord Linwood v. NCNB Texas*, 885 S.W.2d 102, 103 (Tex. 1994); *see also* TEX. R. CIV. P. 296. We disregard the findings. *See IKB Indus.*, 938 S.W.2d at 443.