ACCEPTED
04-17-00609-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
1/22/2018 1:03 PM

## No. 04-17-00609-CV

IN THE COURT OF APPEALS FOR THE
FOURTH JUDICIAL DISTRICT OF TEXAS
SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
1/22/2018 1:03:16 PM
KEITH E. HOTTLE
CLERK

**Marta Arredondo,
Appellant
v.**

**AEP Texas Central Company, T&D Solutions, LLC, and
TechServ Consulting & Training, Ltd.,
Appellees**

Appeal from the 79th District Court of Brooks County, Texas
*{Hon. Richard Terrell Presiding}*

## BRIEF OF APPELLEE AEP TEXAS CENTRAL COMPANY

LAW OFFICE OF
AUDREY MULLERT VICKNAIR

Audrey Mullert Vicknair
State Bar No. 14650500
802 N. Carancahua, Ste. 2100
Corpus Christi, Texas  78401-0038
(361) 884-5400; (361) 884-5401 fax
avicknair@vicknairlaw.com

SCHAUER & SIMANK, P.C.

G. Don Schauer
State Bar No.  17733298
615 N. Upper Broadway, Ste. 700
Corpus Christi, Texas 78401-0781
(361) 884-2800; (361) 884-2822 fax
dschauer@cctxlaw.com

*Attorneys for Appellee AEP Texas
Central Company*

i

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................... iv

STATEMENT OF THE CASE............................................................ viii

STATEMENT REGARDING ORAL ARGUMENT ................................x

ISSUES PRESENTED, RESTATED ....................................................x

1. The trial court properly rendered summary judgment for AEP.

   a.      AEP owed no duty to the Plaintiff.

      1.      T&D is an independent contractor and Appellant fails to raise a genuine issue of material fact otherwise. Appellant does not allege AEP exercised actual control, and AEP did not have contractual control.

      2.      Appellant does not dispute that TechServ, the inspector, is an independent contractor as its contract with AEP specifically states; Appellant does not contend AEP had actual control and does not cite to any contractual provisions to the contrary.

   b.      Removing a stub pole and filling the hole with dirt is not an inherently dangerous activity.

2.      Appellant does not challenge all of the arguments lodged in AEP's No-Evidence Motion for Summary Judgment, granted by the trial court. Specifically, AEP argued there was no evidence of foreseeability or proximate cause.

STATEMENT OF FACTS ...................................................................1

 I.   Plaintiff's Allegations  ...........................................................1

II.    AEP Files a Traditional and No Evidence Motion for Summary
        Judgment (C.R. 28-202) .......................................................2

       A.   AEP's Summary Judgment Evidence .......................................3

III.  Plaintiff's Response ...............................................................7

       A.    Arredondo's Summary Judgment Evidence .......................... 7

IV.  AEP's Reply in Support of its Summary Judgment Motions...........................10

V.  Appellant's First Supplemental Response ......................................................10

VI.  AEP's Sur-Reply............................................................................................11

VII.  T&D and TechServ's Summary Judgment Motions .......................................11

SUMMARY OF THE ARGUMENT .........................................................................12

ARGUMENT ............................................................................................................14

I.  Standard of Review...................................................................................14

II.  Summary Judgment was Properly Granted to AEP ...................................16

    A.  AEP Owed No Duty to the Appellant: this Work was Performed by
    Independent Contractors .....................................................................16

        1.  Premises Liability ........................................................................16

        2.  Negligence and Gross Negligence ...............................................18

        3.  No Liability for the Work of Independent Contractors ......................20

    B.  Control Must be Actual or Contractual .................................................. 23

    C.  AEP Did Not Have Contractual Control Over T&D ..............................24

    D.  Appellant Does Not Allege AEP Had Actual or Contractual
    Control Over TechServ; TechServ's Status as an Independent
    Contractor is Unrebutted ......................................................................29

III.  The Removal of a Stub Pole is Not an Inherently Dangerous Activity..........29

IV.  Appellant Has Not Addressed AEP's No Evidence Motion Regarding
    Foreseeability or Proximate Cause ...............................................................35

CONCLUSION ........................................................................................................36

 PRAYER .................................................................................................................36

CERTIFICATE OF COMPLIANCE ........................................................................38

CERTIFICATE OF SERVICE ................................................................................38

# INDEX OF AUTHORITIES

## CASES

*Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627 (Tex. 1976) .................................17

*Agric. Warehouse, Inc. v. Uvalle,* 759 S.W.2d 691
(Tex.App.--Dallas 1988, writ denied)...................................................30

*Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945 (Tex. 1998) .......................23

*Bastida v. Aznaran,* 444 S.W.3d 98 (Tex.App.—Dallas 2014, no pet.)..................19

*Bontke v. Cargill Meat Logistics Solution, Inc.,* No. 07-12-00328-CV, 2014 WL
1493369, 2014 Tex.App. LEXIS 4048 (Tex.App.--Amarillo April 14, 2014, no
pet.) (mem. op)................................................................... 30, 31

*BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485
(Tex. App.—San Antonio 2013, pet. denied).......................................15

*Braudrick v. Wal-Mart Stores, Inc.,* 250 S.W.3d 471
(Tex.App.--El Paso 2008, no pet.)............................................... 20, 21

*Cameron Mill & Elevator Co. v. Anderson*, 34 Tex. Civ. App. 105, 78 S.W. 8
(1903), *aff'd*, 98 Tex. 156, 81 S.W. 282 (1904)......................................... 33, 34

*Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195 (Tex. 1995)............................ 18, 19

*Cent. Ready Mix Concrete Co. v. Islas,* 228 S.W.3d 649 (Tex. 2007) ...... 30, 31, 33

*Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623 (Tex. 1996)............................ 15, 35

*City of Alton v. Sharyland Water Supply Corp.*, 402 S.W.3d 867
(Tex.App.--Corpus Christi 2013, pet. denied)...................................19

*City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d 597
(Tex.App.—San Antonio 2013, pet. denied).......................................14

*City of Waco v. Kirwan,* 298 S.W.3d 618 (Tex. 2009)...........................................19

*Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523 (Tex. 1997)....... 16, 18, 22

*Columbia Med. Ctr. of Los Colinas, Inc. v. Hogue*, 271 S.W.3d 238
(Tex. 2008)....................................................................................18

*Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex. 1983)..................................16

*Dow Chem. Co. v. Francis*, 46 S.W.3d 237 (Tex. 2001)..........................................15

*E.I. DuPont de Nemours & Co. v. Roye*, 447 S.W.3d 48
    (Tex. App.--Houston [14th Dist.] 2014, pet. dism'd) ................................. 17, 18

*Fagerberg v. Steve Madden, Ltd.,* No. 03-13-00286-CV, 2015 WL 4076978
    (Tex. App.--Austin July 3, 2015, no pet.) (mem. op.).........................................23

*Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903
    (Tex.App.--Fort Worth 2009, pet. denied) .......................................................24

*Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788 (Tex. 2006)..................... 21, 23, 26, 27

*Ford Motor Co. v. Miles,* 967 S.W.2d 377
    (Tex. 1998) (Gonzalez, J., concurring)............................................................19

*Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598 (Tex. 2004) ...................................15

*General Elec. Co. v. Moritz*, 257 S.W.3d 211 (Tex. 2008) .....................................17

*Gillespie v. Hernden*, 516 S.W.3d 541
    (Tex.App.—San Antonio 2016, pet. denied)..................................................... 15

*Graff v. Beard*, 858 S.W.2d 918 (Tex. 1993) ........................................................21

*Hanna v. Vastar Res., Inc.,* 84 S.W.3d 372
    (Tex. App.--Beaumont 2002, no pet.)...............................................................31

*Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354
    (Tex. 1998) (per curiam)..................................................................................27

*Jacobs v. Huser Constr., Inc.*, 429 S.W.3d 700
    (Tex.App.--San Antonio 2014, no pet.)................................................ 20, 24, 28

*KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70 (Tex. 2015) ......................................14

*Keetch v. Kroger Co.,* 845 S.W.2d 262 (Tex. 1992) ...............................................18

*Koch Ref. Co. v. Chapa*, 11 S.W.3d 153 (Tex. 1999)..................... .20, 21, 22, 26, 28

*Kolius v. Ctr. Point Energy Houston Elec. LLC,* 422 S.W.3d 861
    (Tex.App.--Houston [14th Dist.] 2014, no pet.). ........................................ 31, 32

*Kroger Co. v. Elwood*, 197 S.W.3d 793 (Tex. 2006) (per curiam) ..........................19

*Lee Lewis Constr. Co. v. Harrison*, 70 S.W.3d 778 (Tex. 2001) ...........................17

*Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572 (Tex. 2006) .......................................14

*MBank El Paso N.A. v. Sanchez*, 836 S.W.2d 151
(Tex. 1992) (Hecht, J., dissenting) .......................................................................30

*Merriman v. XTO Energy Inc.*, 407 S.W.3d 244 (Tex. 2013) .......................... 15, 35

*Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401 (Tex. 2009).....................17

*Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640 (Tex. 2016) ............ 16, 17, 18

*Oncor Elec. Deliv. Co., LLC v. Murillo*, 449 S.W.3d 583
(Tex. App.--Houston [1st Dist.] 2014, pet. denied).............................................17

*Randall Noe Chrysler Dodge, LLP v. Oakley Tire Co.,* 308 S.W.3d 542
(Tex.App.--Dallas 2010, pet. denied) ..................................................................31

*Richards v. Domino's Pizza, Inc.,* No. 05-96-0024-CV, 1997 WL 644867
(Tex.App.--Dallas Oct. 21, 1997, pet. denied)
(not designated for publication)..........................................................................31

*Scott Fetzer Co. v. Read,* 945 S.W.2d 854
(Tex.App.--Austin 1997), *aff'd*, 990 S.W.2d 732 (Tex. 1998)...........................30

*Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.,* 106 S.W.3d 118
(Tex.App.--Houston [1st Dist.] 2002, pet. denied)..............................................19

*Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10 (Tex. 1994).........................................19

*Vann Horn v. Chambers*, 970 S.W.2d 542 (Tex.1998) ...........................................19

*Victoria Elec. Coop., Inc. v. Williams,* 100 S.W.3d 323
(Tex. App.--San Antonio 2003, pet. denied). ........................... 21, 22, 26, 27, 28

*Weidner v. Sanchez,* 14 S.W.3d 353
(Tex. App.--Houston [14th Dist.] 2000, no pet.).................................................24

## STATUTES AND RULES

TEX. R. APP. P. 39.1. ........................................................................... ix

TEX. R. CIV. P. 166a(i) ........................................................................14

**TO THE HONORABLE FOURTH COURT OF APPEALS**:

COMES NOW Appellee AEP Texas Central Company ("AEP") and files its Appellee's Brief. The trial court properly granted traditional and no evidence motions for summary judgment filed by AEP. The judgment should be affirmed.

## STATEMENT OF THE CASE

This is an appeal from an order granting both a traditional and no evidence summary judgment to AEP. Appellant Marta Arredondo filed suit against AEP and T&D Solutions on September 15, 2015, in the 79th Judicial District Court, Brooks County, Texas, Cause No. 15-08-16992-CV, the Hon. Richard Terrell presiding (C.R. 14, 22).[1] She later added TechServ as a defendant (C.R. 22). By her Second Amended Petition, she alleged negligence, negligence per se and gross negligence against all defendants, asserting that she fell into a shallow hole on her property allegedly caused by the removal of a utility "stub" pole[2] two weeks prior (C.R. 23-27).

AEP answered (C.R 20, 204-205) and filed a traditional and no-evidence motion for summary judgment (C.R. 28-202).

---

[1] Appellant requested a separate record for each Defendant/Appellee. AEP here cites to the record filed in reference to itself.

[2] A "stub pole" is generally a utility pole from which the top portion has been cut off after the uppermost (electric) lines have been removed and transferred to a new pole but to which other wires (usually telephone or cable television) remain attached on the lower portion; the stub pole is not removed from the ground until all wires attached to it have been relocated.

Arredondo filed a Third Amended Petition that changed her allegation regarding the timing of the removal of the pole, asserting that the acts made the basis of the suit occurred months prior (C.R. 210-216). She did not revise her causes of action (id.).

Arredondo filed a response to AEP's traditional motion for summary judgment (C.R. 217-337). As to the no-evidence motion, she argued she needed additional discovery to respond (C.R. 229-230). AEP filed a Reply (Supp. C.R. 10-20 [filed 11/2/17]).[3]

The summary judgment was argued in open court (R.R. 2, *passim*) but because of discovery disputes between Plaintiff, TechServ and T&D, final submission was set for a later date (C.R. 451).

Arredondo filed a first supplemental response to AEP's summary judgment motion supplementing one argument she had made previously, but did not address all of the elements challenged by AEP's no evidence motion (C.R. 452-565). AEP filed a reply (C.R. 566-572).

The trial court granted AEP's traditional and no evidence motions (C.R. 573-74, 578-79). The trial court also granted traditional and no evidence motions for summary judgment filed by T&D and TechServ.

---

[3] There are two Supplemental Clerk's Records; the one referred to herein was filed November 21, 2017 at AEP's request.

## STATEMENT REGARDING ORAL ARGUMENT

AEP believes oral argument is not necessary. TEX. R. APP. P. 39.1. The dispositive issues have been authoritatively decided and the complete record is before this Court. The decisional process would not be significantly aided by oral argument. *Id.*

## ISSUES PRESENTED, RESTATED

1.  The trial court properly rendered summary judgment for AEP.

    a.  AEP owed no duty to the Plaintiff.

        1.  T&D is an independent contractor and Appellant fails to raise a genuine issue of material fact otherwise. Appellant does not allege AEP exercised actual control, and AEP did not have contractual control.

        2.  Appellant does not dispute that TechServ, the inspector, is an independent contractor as its contract with AEP specifically states; Appellant does not contend AEP had actual control and does not cite to any contractual provisions to the contrary.

    b.  Removing a stub pole and filling the hole with dirt is not an inherently dangerous activity.

2.  Appellant does not challenge all of the arguments lodged in AEP's No-Evidence Motion for Summary Judgment, granted by the trial court. Specifically, AEP argued there was no evidence of foreseeability or proximate cause.

## STATEMENT OF FACTS

### I.  Plaintiff's Allegations

By her Third Amended Petition, Arredondo alleges that in July, 2014, she was mowing her lawn when she stepped backward into a hole "2 ½ to 3 feet deep" which she contends was "left from the removal of a utility pole that took place previously." (C.R. 211) The evidence shows the pole was removed in December 2013 (C.R. 65-66). In her Brief, Appellant acknowledges T&D marked the work as complete on December 2, 2013 and that TechServ marked the inspection complete on December 9, 2013 (Ant Br at 10, 11). In her response to T&D's summary judgment motion, Arredondo averred: "Initially, Plaintiff believed the hole was created a few weeks before this incident, however it has been discovered that the hole was likely created many months before this incident occurred. It is believed that the utility pole was removed from Plaintiff's yard a few weeks before this incident. Plaintiff has since updated her Petition to reflect this newly discovered information." (T&D C.R. 136)

Appellant alleged in her petition, "Defendants had a utility easement on her property," "had sole responsibility for the safe maintenance, inspection and control for the easement after undertaking removal of the pole and created a defect in the easement property when they removed the pole and failed to fill the hole or otherwise warn of its existence." (C.R. 211)

Arredondo alleged negligence, negligence per se and gross negligence (C.R.

1

212). She asserted as basis for her negligence and negligence per se claims, "A possessor of land is liable to an injured person if the possessor of land creates a dangerous condition and then fails to warn of the existence of the condition or Landlord fails to make all repairs and do whatever is necessary to put and keep the premises in a safe condition. The Defendants failed to properly inspect, repair, and maintain the easement after removal of the pole." (C.R. 212)

## II. AEP Files a Traditional and No Evidence Motion for Summary Judgment (C.R. 28-202)

In its traditional motion, AEP noted that Arredondo is the owner of the property in question, and denied having an easement on the property (C.R. 30, n. 1, C.R. 31). But AEP argued that regardless of either party's status, T&D Solutions and TechServ were independent contractors solely responsible for the work performed; AEP had no control over the means, manner or method of their work (C.R. 29-37). Because Arredondo's injury was allegedly the result of the property's condition rather than an activity, premises liability principles apply. An owner/occupier of land has no duty with regard to premise defects created by an independent contractor, or to inspect and warn of alleged dangerous conditions resulting from the independent contractor's work, absent a right to control the work that created the alleged defect. AEP, having no such control, neither owed nor breached any duty to Arredondo (C.R. 30-37).

In the no-evidence portion of its motion, AEP asserted Arredondo could adduce no evidence to support the elements of her claims, that is, no evidence to show:

"1. That AEP had any duty to the Plaintiff because the condition of which she complains was created by an independent contractor and not AEP;

2. That AEP, under the circumstances and facts herein, breached any duty to the Plaintiff because Plaintiff has failed to establish that AEP exercised any control over the independent contractor either contractually or actually;

3. *That AEP had any reason to foresee that Plaintiff's injuries could result from the work of the independent contractor.*

Specifically*, there has been no evidence to date that has shown that AEP breached any legal duty to the Plaintiff or that any act or omission of AEP proximately caused the Plaintiff's damages.* Thus, Defendant moves for summary judgment because there is no evidence of the above-referenced elements of the Plaintiff's causes of action."

(C.R. 29, 37-38) (emphasis added)

### A. AEP's Summary Judgment Evidence

The undisputed evidence shows that AEP contracted with T&D Solutions to perform the removal of the pole and filling of the hole and with TechServ Consulting and Training to inspect the work that T&D was hired to perform.

Roel Lopez, an engineering technician with AEP, testified by deposition that he drew up a work order that included the removal of the pole, referred to as a "stub pole" (C.R. 42, 46, 47-48, 49). The task entailed pulling the pole out of the ground, filling the hole with dirt, and returning the pole to the AEP yard (C.R. 48). Lopez testified he does not, in his work orders, tell the independent contractors how the

3

work is to be done (C.R. 49 "I don't specify, on any of the projects, what they're using."). The contractor is expected to cover the hole or warn if it has not done so (C.R. 50).

Lopez testified that TechServ, the independent contractor inspector AEP used in the area at the time, verified the work in the field and was expected to confirm the hole was covered or a warning was placed (C.R. 50, 51, 52, 55-56). AEP was not involved in how or when the inspector did its job (C.R. 51). Lopez testified, "[A] TechServ contractor [Richard Luna] signed off on the project that they inspected or looked over the work." (C.R. 52-54) If a hole was left after a job, it was the responsibility of the T&D Solutions crew working the job to warn the public (C.R. 50). It was the inspector's duty to point out if a job was not done properly or if a hole had not been filled (C.R. 55-56).

Robert Ramos, a foreman with T&D Solutions, testified by deposition that he received the aforementioned work order, and he and his crew performed all of the tasks contained therein (C.R. 58, 63, 64-65, 69-70). Ramos supervised T&D's work that day (C.R. 70). No one from AEP was there (id.). T&D had removed stub poles before and knew how to do it; no one had to tell them how; only T&D was at the site (C.R. 70-71). T&D only used T&D equipment and T&D employees to remove the pole (id.).

Ramos confirmed that Richard Luna was the TechServ inspector (C.R. 67-68).

4

"He was an inspector for, contract inspector for AEP, which he would go and inspect us and the job, for us to work safe and -- that was his job to check, like, that pole is removed and everything was done by AEP's specs." (C.R. 68) "[T]hey do audits and they go to your job sites." (id.) Richard Luna was physically at this jobsite (id.).

Danny Garcia, the AEP supervisor in the Falfurrias area at the time, testified that when AEP hires a professional contractor, it does not tell them how to do their job (C.R. 194, 198, 199-200, 201). Rather, AEP's third party contractors and inspectors are professional utility contractors that know how to do their jobs, which AEP expects them to do (C.R. 201-202). When a stub pole is removed, it is expected that the hole is filled in to leave it safe and intact (C.R. 202).

Authenticated copies of the contracts in effect on the date the work was performed are in evidence (C.R. 79; T&D: C.R. 82-137; TechServ: C.R. 139-192). Under the general terms and conditions for the services to be provided by each of the contractors, each contractor is expressly designated and defined as an independent contractor. As to T&D Solutions:

4.0     RELATIONSHIP OF THE PARTIES

> 4.1     Contractor [T&D] and all of its employees and Subcontractors are, with respect to Owner [AEP], independent contractors. Contractor will be solely responsible for the supervision, direction, and control of its employees and Subcontractors. Contractor is responsible for the payment of all compensation, benefits, and employment taxes with respect to the Contractor's employees.

(C.R. 91). "Contractor hereby agrees to provide all supervision, labor, equipment

5

and specified material necessary to perform … maintenance services…." (C.R. 82, ¶ I.)   Work Requests and Authorizations include only a scope of work (C.R. 82-83, ¶¶ II. a, b).

"Contractor shall at its expense provide everything necessary for the complete, proper and timely execution of the Work…." (C.R. 90, ¶ 2.1) "Work" "means all of Contractor's obligations under the Contract." (C.R. 89, ¶ 1.13)

The contract further requires the independent contractor to be responsible for all damages to private property occasioned by their work (C.R. 117, ¶ 1.2.3).

AEP's contract with TechServ states:

1.0     DEFINITIONS

     1.1     Contract: "Contract" means the Contract Letter signed by the parties and all documents referenced in the Contract Letter.

     1.2     Consultant: "Consultant" means the entity contracting with Owner for the performance of Work.  In performing this Contract, Consultant shall be an independent contractor.

(C.R. 148) TechServ is the named "Consultant" in the contract (C.R. 139). "Consultant agrees to provide all supervision, labor, and specified equipment and material necessary to perform joint use engineering services…." (C.R. 142) "Consultant shall at its expense provide everything necessary for the complete, proper and timely execution of the Work including, but not limited to, home office support, supervision, labor, tools, transportation, equipment, materials and supplies, unless explicitly excluded in the Contract." (C.R. 148, ¶ 2.1) "Work" "means all of

Consultant's obligations under the Contract." (*id*. at ¶ 1.5)

## III. Plaintiff's Response

Arredondo lodged three arguments in her Response to AEP's motion for summary judgment:

"AEP is the dominant easement holder of the property where this incident occurred and therefore owed a duty to use ordinary care in order to avoid injury to the Plaintiff, the servient easement holder";

"Defendant AEP had a contractual right to control Defendant T&D, and therefore has a duty to ensure their work was done with ordinary care as to not create a dangerous condition that could harm Plaintiff"; and

"Even if Defendant T&D is considered an independent contractor, which Plaintiff denies, the work they performed is considered inherently dangerous, and therefore AEP's duty to make safe is non-delegable."

(C.R. 217-18)

Arredondo did not contend that AEP had contractual (or any) control over TechServ, the independent contractor inspector she concedes inspected and approved T&D Solutions' work (C.R. 217-230). She also did not respond to AEP's no evidence motion. Instead, she alleged that she needed more time for discovery (C.R. 229-230).

### A. Arredondo's Summary Judgment Evidence

Arredondo attached, to her summary judgment response, AEP's Response to Interrogatories, which states, "The work in question was performed on the city right-

of-way." (C.R. 235)[4] She also attached her deposition, in which she confirmed that this is her property and there is a city easement or right of way in the area where the incident occurred (C.R. 244 depo p. 79).

Arredondo's deposition also states that in July 2014 she was mowing her grass in an area of her property where a utility pole had previously been removed (C.R. 240 depo p. 26, 27). She had no actual knowledge when the pole was removed from the ground and from her property (C.R. 244 depo p. 79-80). The grass was "tall" (C.R. 240 depo p. 27). She says she backed up while mowing and one of her feet stepped into what she believes was a 2 ½ foot deep hole (C.R. 241 depo p. 30). She does not know if a hole was left after the pole was removed; she did not check to see (C.R. 242 depo p. 42-43). She also did not look at the high grass area before mowing (id. depo p. 42).

Arredondo also attached excerpts from AEP supervisor Daniel Garcia's deposition, which reiterates that AEP hires independent contractors to perform these tasks, and the third party inspector has to sign off on the job before the contractor is paid; AEP relies on the contractors and inspectors to do their jobs (C.R. 312-13 ["we don't tell them how to do…."]). The inspector ensures the job is complete and calls

---

[4] The interrogatories also reiterate that a contractor removed a stub pole on the premises; that T&D Solutions was performing work as the independent contractor; and that TechServ was hired to inspect the work performed (C.R. 235-36).

the contractor back if it is not (id.).

Arredondo attached excerpts from AEP engineering technician Roel Lopez's deposition, which show the contract inspector (TechServ) inspects the crew and is responsible for ensuring the work is done to AEP standards (C.R. 335). The property has to be put back the way it was (C.R. 335). It is the responsibility of the contractor – the crew working the job (T&D) -- to cover any hole or warn about it (C.R. 336). Lopez testified, "The inspector [TechServ] gets involved in that he's checking and verifying the work out in the field." (C.R. 336)

Arredondo presented no evidence that a hole was left in the ground after the stub pole was removed in December 2013. She testified she did not know (C.R. 242 depo p. 42-43). In her Appellant's Brief in this Court regarding TechServ, she quotes from the deposition of TechServ's Richard Luna, who testified expressly that when he inspected T&D's work, the hole where the stub pole was located was filled (Tech Serv Ant Br. at 25: "It was covered when I inspected it."). She also concedes T&D's Robert Ramos testified he filled the hole; the hole was immediately covered with dirt when the pole was removed (id. at 28-30).

In her Brief regarding AEP, Appellant states:

T&D [sic] had an independent contract with Techserv wherein Techserv would inspect work performed by T&D. (2RR9). Techserv employee, Richard Luna, inspected Appellant's property. (Techserv1CR438). Techserv inspected the work completed by T&D on Appellant's property and marked the inspection complete on December 9, 2013. (2RR9).

(Ant Br. at 11).[5]

**IV.    AEP's Reply in Support of its Summary Judgment Motions**

In its Reply in support of its summary judgment motions, AEP countered all of Arredondo's arguments with substantial case law (11/21/17 Supp C.R. 10-20) and argued (1) there is no evidence of an easement; (2) AEP has no contractual control over T&D; and (3) the removal of a stub pole is not an inherently dangerous activity. AEP reiterated its no evidence arguments (*id.* at 18).

**V.    Appellant's First Supplemental Response**

The trial court granted extensions of time and a continuance and did not submit the motions for summary judgment for decision until August 16, 2017 (C.R. 424, 445, 449, 451). Arredondo filed a Supplemental Response on August 9, 2017 (C.R. 452-455). She argued only that this case involved an inherently dangerous activity, categorizing this as "electrical work" and also arguing utility poles are heavy and can cause injury if they fall on a person (C.R. 452-56). Arredondo quotes from depositions and attaches (but never addresses, references or cites, as the rules require) an unauthenticated "news release" and a "magazine article" to support her position that utility work is inherently dangerous.

Arredondo did not respond to AEP's no evidence motion for summary

---

[5] There is no evidence T&D had a contract with TechServ. AEP had the contracts with T&D and TechServ.

judgment, in particular AEP's arguments that there was no evidence of foreseeability or that any act or omission of AEP proximately caused Arredondo's damages.

## VI. AEP's Sur-Reply

In its Sur-Reply, AEP reiterated authority from the Texas Supreme Court and this Court that shows the removal of a stub pole is not inherently dangerous, and reiterated all of its no evidence grounds (C.R. 566-571).

## VII. T&D and TechServ's Summary Judgment Motions

Both T&D and TechServ filed traditional and no evidence motions for summary judgment as well (T&D C.R. 31-127; TechServ C.R. 29-168). Both argued principally that there was no evidence of causation; the evidence shows the hole in question was filled in December 2013 and the plaintiff has no controverting evidence (*see*, C.R. 242 depo p. 42-43).

The trial court granted all the Defendants' traditional and no evidence motions for summary judgment (AEP C.R. 578; T&D C.R. 423; TechServ C.R. 498).

# SUMMARY OF THE ARGUMENT

AEP owed no duty to Appellant. It is undisputed the work here was performed by T&D and TechServ, both of which were independent contractors. Arredondo contends a stub pole was removed from the ground on her property in December 2013, and the hole was not filled in at that time. T&D was under contract, as an independent contractor, with AEP to remove the pole and fill the hole. TechServ served as a contract inspector of T&D's work. AEP was not at the site, did not perform the work, and had no control over the work of either company.

To prove liability on the part of AEP, Arredondo has to show that AEP had the requisite amount of control over these independent contractors, either by the actual exercise of control or by the terms of the contracts between the parties. Arredondo does not contend that AEP exercised actual control over either contractor. Thus, she has to prove AEP had contractual control.

Arredondo alleges AEP contractually controlled T&D, the party tasked with removing the pole and filling the hole. But the evidence does not support her contention. The contract expressly states T&D is an independent contractor. No contract provision highlighted by Appellant shows that AEP had sufficient control over T&D to erase the independent contractor relationship. AEP did not have control over the operative details of T&D's work, and did not control any activity that allegedly caused Appellant's injury. AEP did not have such control over T&D that

12

it was not free to do the work in its own way.

Appellant has never alleged that AEP actually or contractually controlled TechServ. The TechServ contract specifically states that TechServ is an independent contractor, with corresponding additional provisions making TechServ solely responsible for, and in control of, its work. It is undisputed TechServ signed off on the job as complete on December 9, 2013. TechServ found the job to have been performed properly.

Appellant cannot show a non-delegable duty on the part of AEP. Removal of a stub pole is not an inherently dangerous activity that would preclude AEP from its independent contractor defense. Arredondo's deposition excerpts and arguments are focused on live electricity and the weight of the pole, neither of which is at issue in this case (she was injured by neither). In addition, the Supreme Court has specifically held that working with electricity is not inherently dangerous (if it were in issue). Indeed, the Supreme Court has rarely found an activity inherently dangerous. Arredondo failed to meet her burden of proof here.

Further, Appellant has not challenged AEP's no-evidence motion on the issues of foreseeability or causation. These are fundamental elements of her claim, contested by AEP. As both are possible bases for the trial court's granting of summary judgment, Appellant has waived her challenge to the trial court's order.

Finally, the trial court granted summary judgment to T&D and to TechServ.

Plaintiff's claims against AEP are based upon alleged acts or omissions by T&D and TechServ. If those summary judgments are upheld, so too should summary judgment be affirmed to AEP.

## ARGUMENT

### I.      Standard of Review

Appellant addresses only the standard of review on appeal from the granting of a traditional motion for summary judgment. But, the trial court also expressly granted AEP's no evidence motion. A no-evidence summary judgment movant must assert that "no evidence supports one or more essential elements of a claim for which the non-movant would bear the burden of proof at trial." *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015) (citing TEX. R. CIV. P. 166a(i)). "The trial court must grant the motion unless the non-movant raises a genuine issue of material fact on each challenged element." *Id*. On appeal, this Court reviews the evidence presented by the non-movant in the light most favorable to her, "crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

This Court reviews a trial court's traditional summary judgment de novo. *City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d 597, 600 (Tex.App.—San Antonio 2013, pet. denied). The Court takes as true all evidence

favorable to the non-movant, and indulges every reasonable inference and resolves any doubts in the non-movant's favor. *Id.* The traditional summary judgment movant bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id*.

The trial court did not state the issues on which it granted AEP's traditional and no evidence motions; therefore, any ground asserted will support the judgment, and all grounds must be challenged on appeal or they are waived. *Cincinnati Life Ins. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996); *Merriman v. XTO Energy Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Summary judgment may be affirmed on any meritorious ground alleged. *Merriman*, 407 S.W.3d at 248.

When parties file both traditional and no evidence motions, this Court reviews the no evidence motion first. *Gillespie v. Hernden*, 516 S.W.3d 541, 553 (Tex.App.—San Antonio 2016, pet. denied) (citing *Ford Motor Co. v. Ridgeway*, 135 S.W.3d 598, 600 (Tex. 2004) ("recognizing that a no-evidence review should be conducted first"); *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 509 (Tex. App.—San Antonio 2013, pet. denied) ("same")).

## II.    Summary Judgment was Properly Granted to AEP

### A. AEP Owed No Duty to the Appellant: This Work was Performed by Independent Contractors[6]

#### 1. Premises Liability

Appellant brought a premises liability claim against the Defendants, asserting a premise defect. AEP focused its arguments in the trial court on its independent contractor defense. AEP would note preliminary that the status of the Appellant is unclear since she owned the property in question. In addition, Appellant has never produced any evidence of an easement on the property. Regardless of the status of the parties, AEP owed Appellant no duty here.

Premises liability is founded on the theory that a property owner generally owes those invited onto the property a duty to make the premises safe or to warn of dangerous conditions, as reasonably prudent under the circumstances. *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 648 (Tex. 2016); *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983).

Assuming for the sake of argument AEP was in control of the premises, "A general contractor in control of the premises is charged with the same duty as an owner or occupier." *Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 527

---

[6] While recognizing that the no evidence motion should be reviewed first, because the arguments presented in the traditional motion establish all of the legal principles, AEP sets forth its traditional arguments first. This also tracks Appellant's briefing.

(Tex. 1997). Assuming similarly that an easement existed, "As an easement holder, a party qualifies as an occupier of the premises for the purposes of creating a duty in tort." *Oncor Elec. Deliv. Co., LLC v. Murillo*, 449 S.W.3d 583, 590 (Tex. App.--Houston [1st Dist.] 2014, pet. denied).

"Like any other negligence action, a defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty. Whether such a duty exists is a question of law for the court." *General Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008) (citing *Lee Lewis Constr. Co. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001); *Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 631 (Tex. 1976)). Appellate courts review de novo a determination regarding whether a legal duty is owed. *Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).

Premises liability is a branch of negligence law, a "special form" that applies to a property owner/occupier who allegedly creates a dangerous condition on its property. *Jenkins*, 478 S.W.3d at 648. The claim of a person injured by the condition is one sounding in premises liability regardless of how she chooses to plead it. *see, e.g. E.I. DuPont de Nemours & Co. v. Roye*, 447 S.W.3d 48, 57 (Tex. App.--Houston [14th Dist.] 2014, pet. dism'd) ("Artful phrasing of the pleadings to encompass … any other theory of negligence does not affect the application of premises liability law.").

A person injured on property occupied by another may have either a

17

negligence claim or a premises liability claim against the occupier. *Jenkins*, 478 S.W.3d at 644; *Olivo,* 952 S.W.2d at 527; *Roye*, 447 S.W.3d at 56. When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply and the plaintiff must have been injured by the activity itself. *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex. 1992). That is not Arredondo's allegation.

When the injury is allegedly the result of the property's condition, as alleged here, premises liability principles apply. *Jenkins*, 478 S.W.3d at 644; *Roye*, 447 S.W.3d at 56-57 (holding plaintiff was limited to a premises liability claim for the allegation that he was injured by a condition of the property). In that event "the injured party is limited to a premises liability theory and must prove his status to establish the type of duty owed by the premises owner." *Roye*, 447 S.W.3d at 57.

## 2. Negligence and Gross Negligence

"Negligence arises when an actor breaches a legal duty in tort, and the breach proximately causes damages." *Columbia Med. Ctr. of Los Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008). The threshold inquiry in a negligence case is whether the defendant owes a legal duty to the plaintiff. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id*.

The duty may be imposed by contract or law. *City of Alton v. Sharyland Water Supply Corp.*, 402 S.W.3d 867, 874 (Tex.App.--Corpus Christi 2013, pet. denied).

Without a duty, AEP cannot be held liable to the Appellant for negligence. *Id.* at 875; *see Kroger Co. v. Elwood*, 197 S.W.3d 793,794 (Tex. 2006) (per curiam). "The non-existence of a duty ends the inquiry into whether negligence liability may be imposed." *Vann Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

The plaintiff must establish both the existence and violation of a duty owed to her by the defendant in order to establish liability in tort. *Centeq Realty,* 899 S.W.2d at 197. Arredondo was therefore required to present evidence raising a genuine issue of material fact that AEP breached a duty to her and that its breach, if any, proximately caused her damages. *City of Alton*, 402 S.W.3d at 875.

Claims for negligence and gross negligence are inextricably intertwined. *Bastida v. Aznaran,* 444 S.W.3d 98, 109 (Tex.App.—Dallas 2014, no pet.) (citing *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.,* 106 S.W.3d 118, 126 (Tex.App.--Houston [1st Dist.] 2002, pet. denied)). Gross negligence presumes a negligent act or omission. *Id.* (citing *Ford Motor Co. v. Miles,* 967 S.W.2d 377, 390 (Tex. 1998) (Gonzalez, J., concurring) (itself citing *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 23 (Tex. 1994)).

If there is no negligence liability, there can be no liability for gross negligence. *City of Waco v. Kirwan,* 298 S.W.3d 618, 623 (Tex. 2009) ("As with negligence

actions. . . a defendant may be liable for gross negligence only to the extent that it owed the plaintiff a legal duty."); *West v. SMG*, 318 S.W.3d 430, 442-43 (Tex. App.-Houston [1st Dist.] 2010, no pet.) (summary judgment properly granted because plaintiff failed to present evidence of duty, a necessary element of her negligence and gross negligence claims); *R T Realty, LP v. Texas Utils. Elec. Co.*, 181 S.W.3d 905, 914 (Tex. App.--Dallas 2006, no pet.) ("The threshold inquiry regarding a gross negligence claim is whether a legal duty existed.").

### 3. No Liability for the Work of Independent Contractors

"Generally, an owner of land does not owe any duty to ensure independent contractors perform their work in a safe manner." *Shell Oil Co. v. Kahn,* 138 S.W.3d 288, 295 (Tex. 2004); *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 (Tex. 1999). Premises defects arising on property where an independent contractor is working are divided into two categories: (1) defects existing when the independent contractor enters and (2) defects created by his work. *Kahn*, 138 S.W.3d at 295; *Jacobs v. Huser Constr., Inc.*, 429 S.W.3d 700, 703 (Tex.App.--San Antonio 2014, no pet.); *Braudrick v. Wal-Mart Stores, Inc.,* 250 S.W.3d 471, 476-77 (Tex.App.--El Paso 2008, no pet.). "[A]n owner or occupier has no duty with regard to defects created by an independent contractor, unless he retains a right to control the work that created the defect." *Braudrick*, 250 S.W.3d at 476-77. Absent "a relationship between the parties giving rise to the right of control, one person is under no legal

20

duty to control the conduct of another, even if there exists the practical ability to do so." *Graff v. Beard*, 858 S.W.2d 918, 920 (Tex. 1993).

For a duty to attach, the owner or occupier's role "must be more than a general right to order the work to start or stop, to inspect progress or receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations." *Koch Ref. Co.*, 11 S.W.3d at 155; *accord*, *Braudrick*, 250 S.W.3d at 476-77.  As the Supreme Court continued in *Koch*, "Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Id.*, 11 S.W.3d at 155; accord, *Victoria Elec. Coop., Inc. v. Williams,* 100 S.W.3d 323, 326 (Tex. App.--San Antonio 2003, pet. denied).

> Employers can direct when and where an independent contractor does the work and can request information and reports about the work, but an employer may become liable for the independent contractor's tortious acts *only* if the employer controls the details or methods of the independent contractor's work to such an extent that the contractor cannot perform the work as it chooses.

*Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 792 (Tex. 2006) (emphasis added).

In *Braudrick*, the plaintiffs tripped over a speed bump in a Wal-Mart/Sam's Club parking lot at night, in an area under construction, and sued the Wal-Mart entities and the independent contractor Emerson alleging premises liability: an

unpainted speed hump and poor lighting. *Id.*, 250 S.W.3d at 474-75. Wal-Mart established that the construction and lighting were solely under the control of Emerson, the independent contractor, pursuant to the contract between the parties. *Id.* at 477-78, 480. The take-nothing judgment in favor of Wal-Mart was affirmed. *Id.* at 481.

In *Victoria Elec. Coop.,* Victoria Electric contracted with Urban Electrical Services to construct and maintain electrical distribution lines in its franchise area; Urban loaded six utility poles onto a truck to transport them to the installation area. *Id.*, 100 S.W.3d at 325. The poles extended beyond the end of the trailer and necessary warnings were not attached. *Id.* As the truck and trailer crossed an intersection, the decedent ran into the extended poles and sustained fatal injuries. *Id.* Plaintiffs sued Victoria Electric, Urban, and the truck driver. This Court noted, "The employer must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability." *Id.* at 326 (citing *Koch Ref. Co*., 11 S.W.3d at 156). "Further, we must remember that liability results only when the right of control relates to the injury-producing activity itself." *Id.* (citing *Olivo*, 952 S.W.2d at 528).

Here, there is no dispute that AEP hired independent contractors – T&D to remove this stub pole and fill the hole on Appellant's property, and TechServ to inspect the work. Therefore, unless Appellant can prove AEP had control over these

22

independent contractors, AEP owed no duty to Appellant related to the work performed by them.

### B. Control Must be Actual or Contractual

A party can prove right to control either with evidence of a contractual agreement that explicitly assigns a right to control, or with evidence of actual control over the manner in which the work was performed. *Fagerberg v. Steve Madden, Ltd.,* No. 03-13-00286-CV, 2015 WL 4076978, *1 (Tex.App.--Austin July 3, 2015, no pet.) (mem. op.) (citing *Fifth Club*, 196 S.W.3d at 791-92; *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998) (which holds, "Because an independent contractor has sole control over the means and methods of the work to be accomplished, however, the individual or entity that hires the independent contractor is generally not vicariously liable for the tort or negligence of that person.")). "An entity is not liable for an independent contractor's acts unless it had some right to control the contractor's work." *Id.* (citing *Fifth Club*, 196 S.W.3d at 791-92).

Appellant does not allege that AEP exercised actual control over either T&D or TechServ. Thus, Appellant has to show AEP had a contractual right to control these independent contractors before liability against AEP can attach.

## C. AEP Did Not Have Contractual Control Over T&D

Appellant alleges AEP had contractual control over T&D. But the evidence does not support her contention. T&D was expressly defined as an independent contractor, with commensurate independent duties accordingly, in the contract.

"A contract expressly providing that a person is an independent contractor is determinative of the relationship absent evidence that the contract is a mere sham or subterfuge designed to conceal the true legal status of the parties or that the contract has been modified by a subsequent agreement between the parties." *Farlow v. Harris Methodist Fort Worth Hosp.,* 284 S.W.3d 903, 911 (Tex.App.--Fort Worth 2009, pet. denied); *Weidner v. Sanchez,* 14 S.W.3d 353, 373 (Tex. App.--Houston [14th Dist.] 2000, no pet.). There is no evidence of either here.

In *Jacobs*, this Court examined a contract to determine whether the defendant retained a contractual right to control the means, methods, or details of the plaintiff's employer's work. After examining several contract provisions, which gave the general contractor the right to ensure that the subcontractor's work met the general contract and subcontract's specifications and schedules, the Court focused on the section entitled: "22. Independent Contractor," which stated, "[S]ubcontractor shall be an independent contractor and shall assume all of the rights, obligations, and liability applications [sic] to it as such independent contractor." *Id.*, 429 S.W.3d at 704. This Court held that the plain language of the subcontract established the

general contractor had no control over the details of the subcontractor's work. *Id.*

Applied to this case, Section 4 of the contract between AEP and T&D makes clear that T&D is an independent contractor and is solely responsible for the supervision, direction, and control of its employees and subcontractors.

4.0     RELATIONSHIP OF THE PARTIES

> 4.1     Contractor [T&D] and all of its employees and Subcontractors are, with respect to Owner [AEP], independent contractors. Contractor will be solely responsible for the supervision, direction, and control of its employees and Subcontractors.   Contractor is responsible for the payment of all compensation, benefits, and employment taxes with respect to the Contractor's employees.

(C.R. 91). As shown in the Statement of Facts, other contractual provisions likewise evidence the independent contractor status of T&D (C.R. 82, ¶ I.; C.R. 82-83, ¶¶ II. a, b; C.R. 90, ¶ 2.1; C.R. 89, ¶ 1.13; C.R. 117, ¶ 1.2.3).

There is no specific contractual language implicating a right to control the operative details of how T&D worked, or denying T&D the ability to do its work in its own way, to trigger liability. *Id.*, 429 S.W.3d at 704. The provisions of the contract establish AEP had no right to control the means, methods, or details of independent contractor T&D's work.

In support of her argument, Appellant first contends that AEP had the right to give instructions, but concedes the provision she highlights does *not* say that AEP can instruct as to the "means, methods and details of T&D's work." (Ant Br. at 19) To the contrary the contract states, "*Contractor* will be solely responsible for the

25

supervision, direction, and control of its employees and Subcontractors." (¶ 4) The contract also states AEP will give only a scope of work, without detail (¶¶ II. a, b).

Even if the provision Appellant highlights is interpreted to mean that AEP had a general right to order the work to start or stop, to inspect progress or receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations (which it does not), this "does not mean that the contractor is controlled as to his methods of work, or as to operative detail." *Koch Ref. Co.*, 11 S.W.3d at 155. There is no retention of a right of supervision such that T&D "is not entirely free to do the work in its own way." *Id.*

Appellant next cites to a tool provision in the contract (Ant Br. at 19). There is no evidence that specialty tools were needed to fill the hole with dirt, or that ordinary tools had to be used in an unusual way. And asking T&D to provide a list of tools, procedures and practices (*id.*) is no more indicative of control than requesting information and reports about the work, which does not subject the owner to liability. *Fifth Club,* 196 S.W.3d at 792.

This Court held in *Victoria Elec. Coop.* that similar provisions as those above were not sufficient to find more than supervisory control and thus did not trigger liability. *Id.*, 100 S.W.3d at 327-28. "Although Victoria Electric did reserve the right to order corrections if the work was not being done safely, Victoria Electric's right to require Urban to operate safely is not evidence of control over the 'details of what

26

was being done' so as to impose liability." *Id.* at 328.

Appellant next *concedes* that for liability to attach, there must exist a right of control over the injury-causing activity itself (Ant Br. at 20) (citing *Victoria Elec. Coop.,* 100 S.W.3d at 327). Requiring that the work be done as expeditiously as possible with the least inconvenience to the private property owner (Ant Br. at 20-21) does not amount to control of the details or methods of the independent contractor's work to such an extent that the contractor cannot perform the work as it chooses. *Fifth Club,* 196 S.W.3d at 792. Nor does it show that AEP had any control over the (alleged) injury-causing activity itself. There was also no need for an excavation here (Ant Br. at 20).

The remaining list of items highlighted by Appellant (Ant Br. at 21-22) do not evidence a right of control over the alleged injury-causing activity itself: removing the pole and filling the hole with dirt. Language spoken and uniforms worn have no relation to the allegations in this case, nor are there allegations of negligent hiring or training. In addition, as this Court noted in *Victoria Elec. Coop.*, an employer who required the independent contractor to train its employees in safety measures was *not* liable to an employee who was injured because of a violation of those safety measures. *Id.*, 100 S.W.3d at 328 (citing *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998) (per curiam)).

In sum, AEP did not have the right to control the details or methods of T&D's

27

work to such an extent that T&D could not perform the removal of this stub pole and filling of the hole as it chose. None of the provisions cited by Appellant establish that AEP had the right to control the "operative detail" of T&D's work. *Koch Ref. Co.*, 11 S.W.3d at 155; *Victoria Elec. Coop.*, 100 S.W.3d at 328-29, 330. "The scope of [AEP's] duty did not extend to control over the details of how" stub poles are removed and holes are filled. *Victoria Elec. Coop.*, 100 S.W.3d at 329. Absent such specific right of control, the contract does not create in AEP any duty of care to Appellant. *Jacobs,* 429 S.W.3d at 705; *Victoria Elec. Coop.*, 100 S.W.3d at 328-29, 330. Moreover, there is no nexus between the specific provisions of the contract quoted by Appellant and the condition or activity that allegedly caused her injury. *Victoria Elec. Coop.,* 100 S.W.3d at 327.

Finally, as shown in the Statement of Facts, the summary judgment evidence makes clear that no one from AEP told the T&D employees how to perform their job. Testimony establishes that Robert Ramos, the T&D foreman, was supervising the work and no one from AEP was at the work site when it was accomplished. Appellant tendered no evidence to refute this testimony. AEP did not retain or exercise control over T&D's methods or the operative details of the work, specifically the removal of the pole and the filling of the resulting hole. There is no genuine issue of material fact; AEP owed no duty to Appellant. Summary judgment was properly granted.

**D. Appellant Does Not Allege AEP Had Actual or Contractual Control Over TechServ; TechServ's Status as an Independent Contractor is Unrebutted**

Appellant has never alleged that AEP had actual or contractual control over TechServ, which was hired to inspect T&D's work and approve the final product. The TechServ contract specifically states that TechServ is an independent contractor, with corresponding additional provisions making TechServ solely responsible for, and in control of, its work (C.R. 148, accord 139, 142, 148 ¶¶ 1.5, 2.1). Appellant cites no provisions to the contrary.

TechServ was the last entity on the property in the performance of the work that is the basis of Appellant's lawsuit. Appellant concedes T&D completed its work on December 2 and TechServ signed off on the work as completed on December 9, 2013. AEP's summary judgment argument, supported by evidence, that TechServ is an independent contractor has gone unchallenged by Appellant. AEP cannot be held liable for any alleged act or omission on the part of TechServ. Summary judgment in favor of AEP on Appellant's allegations of wrongdoing on the part of TechServ must be affirmed.

**III.    The Removal of a Stub Pole is Not an Inherently Dangerous Activity**

Appellant alleges AEP owes a non-delegable duty to her because the work performed was inherently dangerous, and thus notwithstanding T&D and TechServ's status as independent contractors, AEP is still liable (Ant Br. at 23).

"Texas courts have found very few activities so inherently dangerous as to impose a nondelegable duty." *Cent. Ready Mix Concrete Co. v. Islas,* 228 S.W.3d 649, 652, n. 12 (Tex. 2007) (citing, e.g., *MBank El Paso N.A. v. Sanchez*, 836 S.W.2d 151, 159 (Tex. 1992) (Hecht, J., dissenting)). *MBank* cited multiple cases in which "Texas courts [] have *refused* to characterize use of heavy equipment, inflammable materials, electrical work, blasting, and refinery operations as 'inherently dangerous' activities." *Id.*, 836 S.W.2d at 159 (emphasis added). "Inherently dangerous activities are generally those that are dangerous in their normal, non-defective state." *Cent. Ready Mix*, 228 S.W.3d at 653 (as Appellant concedes, Ant Br. at 23).

"Work is inherently dangerous if it *must* result in probable injury to a third person or the public." *Scott Fetzer Co. v. Read,* 945 S.W.2d 854, 861-62 (Tex.App.--Austin 1997), *aff'd*, 990 S.W.2d 732 (Tex. 1998) (Appellant concedes this as well, Ant Br. at 23) (emphasis added). "Inherently dangerous work has been described as that which is dangerous no matter how skillfully done." *Id.* (citing *Agric. Warehouse, Inc. v. Uvalle,* 759 S.W.2d 691, 695 (Tex.App.--Dallas 1988, writ denied)). The following, in addition to those tasks listed above and below, are not inherently dangerous:

- handling of commercial livestock. *Bontke v. Cargill Meat Logistics Solution, Inc.,* No. 07-12-00328-CV, 2014 WL 1493369 *4, 2014 Tex.App. LEXIS 4048 (Tex.App.--Amarillo April 14, 2014, no pet.) (mem. op) (summary judgment affirmed);

- using a spray apparatus to apply paint. *Randall Noe Chrysler Dodge, LLP v. Oakley Tire Co.,* 308 S.W.3d 542, 547 (Tex.App.--Dallas 2010, pet. denied) (affirming summary judgment);

- delivery of groceries to a refrigerated box at a shore base. *Hanna v. Vastar Res., Inc.,* 84 S.W.3d 372, 377-78 (Tex.App.--Beaumont 2002, no pet.) (affirming summary judgment);

- pizza delivery. *Richards v. Domino's Pizza, Inc.,* No. 05-96-0024-CV, 1997 WL 644867 *3 (Tex.App.--Dallas Oct. 21, 1997, pet. denied) (not designated for publication) (affirming summary judgment).

In *Richards* the court noted prior precedent that armed security service, construction work, protection of property, and use of a plumber's torch were also <u>not</u> inherently dangerous activities. *Id.* at *3.

As the *Bontke* court observed:

> There are inherent risks in most any activity; yet, the presence of those risks does not *ipso facto* mean injury or harm will or probably will result due to the conduct of that activity. For instance, electric shock is an inherent risk faced by an electrician; yet, performing electrical work is not an inherently dangerous activity. The same is true of handling explosives; one need not think hard to see what inherent risks may exist there. Yet, it is not an inherently dangerous activity.

*Id.,* 2014 WL 1493369 at *5 (citing *Cent. Ready Mix*, 228 S.W.3d at 652, n. 12).

"So, it is not enough to simply say that the chance of injury renders the action inherently dangerous." *Id.*

The plaintiff bears the burden to point out summary judgment evidence raising a genuine issue of material fact that the contractor's work was inherently dangerous. *Kolius v. Ctr. Point Energy Houston Elec. LLC,* 422 S.W.3d 861, 868 (Tex.App.--

Houston [14th Dist.] 2014, no pet.). Appellant cites deposition excerpts for the proposition that electric utility work is inherently dangerous. But nowhere is utility work defined. And at no point is there any testimony concerning the very activity at issue and being performed by T&D in this case: removal of a stub pole and filling the resulting hole with dirt.

Appellant focuses on the work of linemen and electricians, that is, work with electricity and electrical circuits, falling energized lines, and electrocution (Ant Br. at 24-28). She also attempts to draw a distinction between electricians and linemen, without explanation (Ant Br. at 29-33). Her injury does not arise from work with electricity, or the unidentified dangers experienced by linemen. And a pole did not fall on her (Ant Br. at 31). Rather, Appellant alleges she stepped into a hole. She fails to show how any activity on the part of any T&D or TechServ employee in this case was inherently dangerous, causing her injury as a result. No witness testified that removing a stub pole and filling the hole with dirt is inherently dangerous.

In *Kolius,* 422 S.W.3d 861, the plaintiff alleged a fire was caused by the allegedly wrongful act of restoring electric current after a hurricane. The plaintiff then argued that working with toppled power lines in a disaster zone that was recently under water, and working on electrical power lines, are inherently dangerous activities. As here, the plaintiff's argument focused on the dangers of electrical power lines and electrocution, but the plaintiff's *allegation* was of

something else entirely. The Fourteenth Court was not cited to, and did not find, any Texas case holding that any of the actions made the basis of either plaintiff's arguments *or* his actual allegations were inherently dangerous. *Id.* at 867-868. So too here: Appellant cites no case for the proposition that removal of a stub pole and filling the hole with dirt is an inherently dangerous activity, and the Texas Supreme Court has specifically refused to characterize electrical work as inherently dangerous. *Cent. Ready Mix,* 228 S.W.3d at 652 n.12.

Appellant cites a 1903 case involving a property owner's hiring of an independent contractor to dig a hole in a Fort Worth city street that was approximately 34 feet long, 28 feet wide, and 12-14 feet deep. *Cameron Mill & Elevator Co. v. Anderson*, 34 Tex. Civ. App. 105, 106, 78 S.W. 8, 9 (1903), *aff'd*, 98 Tex. 156, 81 S.W. 282 (1904). The purpose of the excavation was to install underground storage tanks for fuel oil. *Id.* The appellee, a 13-year-old boy, was riding his bike and fell into the pit at 9 o'clock at night in the dark. There were no lights, signals or barriers around the pit. *Id.* "[E]xcavation in a street is a nuisance, because it renders public travel dangerous." *Id.* at 107. All of the cases cited in *Cameron Mill* involve excavations on public streets of various cities.

The facts of *Cameron Mill* are not "very similar to the facts at issue in this case" as Appellant contends (Ant Br. at 24). A 34 x 28 x 12-14 foot excavation in a public street is wholly and substantially different from a small hole on a grassy area on

33

private property. In addition, since 1903, Texas law regarding inherently dangerous activities has evolved significantly as set forth above.

In addition, the *Cameron Mills* court held, "In those cases where the defect, obstruction or fault is purely collateral to the work contracted to be done, and is the result entirely of the wrongful act of the independent contractor or his workmen, the employer should not be held liable, because such act is not to be anticipated by him." *Id.*, 34 Tex.Civ.App. at 108. As set forth herein, any alleged hole remaining on Arredondo's property (which all defendants deny) was purely collateral to the work contracted to be done and occurred because of the act of an independent contractor. AEP should not be held liable, because such act was not anticipated by AEP.

In sum, there is nothing inherently dangerous in the removal of a utility pole and filling a hole with dirt. No probable injury to the public will arise from this activity. Nor is this a case in which a pit was excavated in the middle of a city street. This was a city right of way at the edge of Appellant's property; it is alleged (but not proved) that a small hole was created there when a stub pole was removed.

Appellant has tendered no case, and no evidence, to show that removal of a stub pole and filling of the hole with dirt is an inherently dangerous activity. Summary judgment was properly granted to AEP.

## IV. Appellant Has Not Addressed AEP's No Evidence Motion Regarding Foreseeability or Proximate Cause

AEP moved for no evidence summary judgment on the ground that there was no evidence of foreseeability or proximate cause (C.R. 29, 37-38). Arredondo has not responded to those bases for summary judgment in the trial court or on appeal. Indeed, in her briefing with respect to the other defendants in the case, she concedes that employees from both T&D and TechServ testified the hole was filled and the job was completed in December 2013. Appellant testified she did not know otherwise.

As shown in the Statement of Facts, in the trial court, in response to AEP's no evidence motion, Arredondo asked for more time for discovery. The trial court granted that request. After discovery was completed, Arredondo filed a supplemental response to AEP's motion, but only addressed her previous assertion that the work was inherently dangerous. Arredondo did not address AEP's no evidence motion.

To the extent the trial court granted AEP's no evidence motion because it found no evidence of foreseeability and/or proximate cause, such ruling has gone unchallenged and the summary judgment should be affirmed. *Cates*, 927 S.W.2d at 625; *Merriman*, 407 S.W.3d at 248.

## CONCLUSION

AEP asserted, in its traditional motion for summary judgment, that the acts or omissions made the basis of this case were solely controlled by independent contractors. Appellant has not contested TechServ, the inspector's, status as an independent contractor. Nor has she asserted that AEP had actual control over T&D. She alleges only that AEP had contractual control over T&D, but she has failed to raise a genuine issue of material fact in this regard. T&D was expressly identified as an independent contractor and no provision in the contract absolved T&D of its ability and right to do its work in its own way. AEP did not retain control over the operative details of T&D's work.

Removing a stub pole and filling a hole with dirt is not an inherently dangerous activity. AEP owed no non-delegable duty here.

Appellant did not respond to AEP's no evidence arguments on the elements of foreseeability and causation. The trial court granted AEP's no evidence motion without stating the basis. Foreseeability and causation have gone unchallenged. The trial court's no evidence summary judgment should be affirmed.

## PRAYER

WHEREFORE, Appellee AEP Texas Central Company prays the Court to affirm the trial court's judgment, and for all other relief to which it is entitled.

Respectfully submitted,

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair
State Bar No. 14650500
LAW OFFICE OF AUDREY MULLERT VICKNAIR
802 N. Carancahua, Ste. 2100
Corpus Christi, Texas 78401-0038
(361) 884-5400; (361) 884-5401 fax
avicknair@vicknairlaw.com


*/s/ G. Don Schauer*
G. Don Schauer
State Bar No.  17733298
SCHAUER & SIMANK, P.C.
615 N. Upper Broadway, Ste. 700
Corpus Christi, Texas 78401-0781
(361) 884-2800; (361) 884-2822 fax
dschauer@cctxlaw.com


*Attorneys for Appellee AEP Texas Central Company*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies, pursuant to TEX. R. APP. P. 9.4(i)(2)(B), that this computer-generated brief is **8,784** words long according to the word count of the computer program used to prepare this document (Microsoft Office Word 2010), from the Statement of Facts through the end of the Prayer. Typeface font is 14-point in the body and 13-point in the footnotes.

*/s/ Audrey Mullert Vicknair*
Audrey Mullert Vicknair

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served in accordance with the Texas Rules of Appellate, on counsel named below, on this the **22nd** day of **January, 2018**, using the Tex.gov electronic e-filing system.

Craig Farrish
THOMAS J. HENRY INJURY ATTORNEYS
521 Starr Street
Corpus Christi, Texas 78401
*Counsel for Appellant*

Kelsi Wade
James M. Tompkins
Branch Masterson Sheppard
GALLOWAY JOHNSON TOMPKINS BURR & SMITH
1301 McKinney Street, Suite 1400
Houston, Texas 77010
*Counsel for T&D Solutions, LLC*

Jose Trevino, Jr.
Joseph Cuellar
Nicholas Smith
VALDEZ TREVINO, P.C.
Plaza Las Campanas
1826 N. Loop 1604 West, Suite 275
San Antonio, Texas 78248
*Counsel for TechServ Consulting and Training, Ltd.*

*/s/ Audrey Mullert Vicknair_*
Audrey Mullert Vicknair